IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| In re: | ) | |
|---|---|---|
| | ) | |
| EUNICE JEAN RUSH, | ) | Case No. 07-21739 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| JOHN WILBUR GLOVER, | ) | Case No. 07-21932 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

These matters are before the Court on the motion of the Chapter 13 Trustee to deny confirmation of the Debtors' Chapter 13 plans. The trustee has objected to each plan on the grounds that it fails to comply with certain provisions of § 1325(b). The Court has combined the discussion and determination of the trustee's objections in the two cases because they raise identical issues. These are core proceedings, pursuant to 28 U.S.C. § 157(b)(2)(L) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 and Rule 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court overrules the trustee's objections to confirmation. Specifically, the Court holds that below-median debtors who have, according to the applicable formula, no disposable income have no projected disposable income and no applicable commitment period and therefore no requirement to commit any particular sum of money to the payment of their unsecured creditors pursuant to the plan. The Court also holds that the appropriate method for determining projected disposable income for below-median debtors is to deduct from their current monthly income, the reasonable and necessary expenses as reflected on Schedule J, with certain adjustments described below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### Eunice Jean Rush

Debtor Eunice Jean Rush filed a petition for relief from under Chapter 13 of the Bankruptcy Code on November 6, 2007.  Debtor filed a Schedule I, Current Income of Individual Debtor, showing net average monthly income of $2,992.00, $686.00 of which according to the detail explaining the entry on line 11, is Social Security.  Her Schedule J, Current Expenditures of Individual Debtor, shows average monthly expenses of $2,727.00, leaving monthly net income of $265.00.  Debtor also filed a Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, indicating current monthly income of $1,576.00, consisting exclusively of two retirement pensions.  The Debtor's annualized current monthly income is $18, 912.00.  According to Line 16 on Debtor's Form 22C, the applicable median family income in the state of Missouri for a household of the same size as the Debtor's is $36,702.00.  Because the Debtor is below the applicable median, she checked the boxes indicating the applicable commitment period is three years and the disposable income is not determined under § 1325(b)(3) and did not complete the remaining portions of the form relating to calculation of expense deductions pursuant to the standards set forth in § 707(b)(2).

Debtor filed a Chapter 13 plan proposing to pay $150.00 per month to the Chapter13 trustee.  The plan provides a 0% recovery to non-priority unsecured creditors.  The Chapter 13 trustee filed a motion to deny confirmation of the plan alleging that the plan violates § 1325(b) in that it runs for only 18 months rather than the 36-month applicable commitment period for a below-median debtor and because the Debtor has excess income in the budget not committed to

payment to the trustee under the plan. Specifically, on the latter point, the trustee observes that the income on Schedule I exceeds the expenses on Schedule J by the sum of $265, but the Debtor proposes to pay the Chapter 13 trustee only $150.00 per month. The Debtor's response is that she has no disposable income if calculated according to the applicable statutory formula. In addition, Debtor argues that even if her projected disposable income were determined by deducting her Schedule J expenses from her Schedule I income, the amount received by her from Social Security should not be included as it is specifically excluded from the definition of current monthly income and that excluding that amount would make her disposable income negative. Finally, Debtor argues that with no disposable income, the concept of an applicable commitment period is simply not applicable to her and that she has no requirement to commit any particular sum of money to her unsecured creditors under the plan.

### John Wilbur Glover

Debtor John Wilbur Glover filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 6, 2007. Debtor's Schedule I shows average monthly net income of $1,268.00, $695.00 of which is Social Security income. Schedule J reflects average monthly expenses of $1,137.00 leaving monthly net income of $131.00. Debtor was apparently unemployed and had no other source of eligible income during the six-month period prior to the filing of the petition as his Form 22C shows no current monthly income. With zero annualized current monthly income, Debtor is quite obviously below the applicable median income for the Debtor's household size in Missouri which is $47,589.00. As with Ms. Rush, because the annualized current monthly income was below the applicable state median, Mr. Glover checked those boxes on Form 22C indicating that the applicable commitment period is three years and the

3

disposable income is not determined under § 1325(b)(3) and did not complete the remaining portions of the form calculating applicable deductions. The Debtor's Chapter 13 plan proposes to pay the sum of $100.00 per month to the Chapter 13 trustee and specifies a dividend of 0% for non-priority unsecured creditors.

As with the prior case, the Chapter 13 trustee filed a motion to deny confirmation contending that the plan fails to comply with § 1325(b) in that payments would be completed in a period of approximately 12 months, less than a 36-month applicable commitment period for a below-median debtor. The Debtor responds by arguing that the appropriate method for determining projected disposable income for a below-median debtor is to subtract from his current monthly income the expenses shown on Schedule J and that completing that calculation in his case shows that his disposable income is a negative number. He argues that with no disposable income, the applicable commitment period is irrelevant and he has no requirement to commit any particular sum to the payment of his unsecured creditors under the plan.

Two issues are raised by these facts and the arguments raised by the parties: (1) How should the Court determine projected disposable income for debtors below the applicable state median? (2) If under the applicable formula, the debtor's disposable income is negative, is the concept of an applicable commitment period relevant to that debtor?

## II. DISCUSSION AND ANALYSIS

### A. Projected Disposable Income

Perhaps the most significant and difficult changes made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") are those relating to the determination of disposable income for Chapter 13 debtors. Prior to the

4

enactment of BAPCPA, the Court determined the debtor's projected disposable income by deducting from the income shown on Schedule I, the expenses shown on Schedule J, subject to the Court's review for the necessity and reasonableness of those expenses. The resulting number constituted the amount to be paid to the Chapter 13 trustee pursuant to the plan. Upon objection by the holder of an unsecured claim or the Chapter 13 trustee, the debtor could obtain confirmation of a Chapter 13 plan only by demonstrating either that the unsecured claims were being paid in full or the debtor was committing all disposable income to make payments into the plan for a period of no less than 36 months. Plan payments could not extend beyond five years. BAPCPA made changes to many of these provisions and has ushered in an entirely different world.

Under BAPCPA, upon objection, if the debtor is not paying all unsecured creditors in full, the plan must provide that all projected disposable income received in the applicable commitment period be applied to make payments to unsecured creditors under the plan. § 1325(b)(1)(B). The applicable commitment period for debtors with incomes below the applicable median for similar household sizes is three years. § 1325(b)(4)(A)(i). Projected disposable income is not defined but BAPCPA contains a new definition of the phrase "disposable income." In § 1325(b)(2) the phrase is defined as current monthly income received by the debtor (minus certain designated payments) less amounts reasonably necessary to be expended for the maintenance or support of the debtor or dependent of the debtor. § 1325(b)(2)(A). The concept of "current monthly income" is itself a defined phrase meaning essentially, the average monthly income the debtor received from all sources during the six-month period prior to the date of the filing of the petition with certain exclusions, one of which is

5

Social Security payments. § 101(10A). In addition, the Code now specifies that the reasonable and necessary expenses to be deducted from current monthly income to determine disposable income are, for debtors above the applicable median to be determined in accordance with § 707(b)(2). § 1325(b)(3). The statute does not specify how expenses are to be determined for below-median debtors. Presumably those expenses are to be taken, as they were prior to the amendments, from the debtor's Schedule J. *See, e.g.*, *In re Fuller*, 346 B.R. 472, 483 (Bankr. S.D. Ill. 2006) ("under BAPCPA, below-median income debtors calculate their expenses the same way they did before BAPCPA – by recording the actual expenses they incur each month on their Schedule J (and now, on their Form B22C)"); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006).

These changes have spawned an avalanche of cases in which the courts have attempted to interpret these provisions. At least three schools of thought have developed with regard to the meaning of projected disposable income for above-median debtors. Some courts hold that the calculations resulting from the B22C form establish a presumptive figure for projected disposable income subject to being rebutted based either on the fact that it fails to reflect the debtor's actual income available to make plan payments or based on a change of circumstances occurring between the filing and consideration of plan confirmation.[1] Others have opted for the

---

[1] *See, e.g., In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) (looks forward to time of confirmation and thereafter); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006)(same); *In re Gress*, 344 B.R. 919 (Bankr. W.D. Mo. 2006)(same); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006)(same); *In re Risher*, 344 B.R. 833 (Bankr. W.D. Ky. 2006)(same); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Teixeira*, 358 B.R. 484 (Bankr. D.N.H. 2006)(reaffirms view of rebuttable presumption and that "disposable income" and "projected disposable income" are identical; ordinarily below-median debtors derive disposable income by subtracting Schedule J expenses from current monthly income; above-median debtors subtract § 707(b) expenses from current monthly income; if presumption rebutted below-median debtors use Schedule I to determine income and Schedule J to determine expenses and above-median debtors use Schedule I to determine income and § 707(b) expenses); *In re Gordon*, 360 B.R. 679 (Bankr. S.D. Cal. 2007) (B22C not controlling; court may consider intervening changes in employment or other circumstances); *In re Grant*, 364 B.R. 656 (Bankr. E.D.

traditional approach under which projected disposable income is determined by subtracting the expenses on Schedule J from the income shown on Schedule I.[2] Still others have held that the calculation resulting from the completion of the B22C form is dispositive.[3] The Eighth Circuit

---

Tenn. 2007) ("projected disposable income" and "disposable income" not synonymous; B22C calculation is starting point which court will presume is disposable income unless rebutted by change of circumstances); *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007) (disposable income on B22C is presumptive projected disposable income; presumption may be rebutted by showing change of circumstances); *In re Beckerle*, 367 B.R. 718 (Bankr. D. Kan. 2007); *In re Mullen*, 369 B.R. 25 (Bankr. D. Or. 2007) (disposable income from Form B22C generally presumptive of projected disposable income; presumption rebutted by existence of excess income as reflected by proposed plan payments); *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007); *In re Plumb*, 373 B.R. 429 (Bankr. W.D.N.C. 2007) (Form B22C is starting point for determining projected disposable income; since income and expense components are forward looking concepts, must take Schedules I and J into consideration); *In re Purdy*, 373 B.R. 142 (Bankr. N.D. Fla. 2007) (projected disposable income is forward-looking concept; B22C controls unless debtor or trustee can show numbers do not reflect fair projection of debtor's budget into future based on substantial change in circumstances); *In re Briscoe*, 374 B.R. 1 (Bankr. D.D.C. 2007) (disposable income figure listed on Form B22C is presumptive, absent evidence of change of circumstances); *In re Warren*, 2007 WL 2683837 (Bankr. M.D. Ala.) (Form 22C calculation creates presumptive starting point for determining projected disposable income; may be rebutted by evidence of debtor's loss of a source of income); *In re Chriss-Price*, 376 B.R. 648 (Bankr. M.D. Tenn. 2006) (determining "projected disposable income" requires consideration of both the future and historical finances of debtor; debtor must propose to pay unsecured creditors number resulting from B22C unless evidence shows this number does not adequately represent debtor's budget projected into future); *In re Pak*, 378 B.R. 257 (9th Cir. B.A.P. 2007) ("disposable income" is merely starting point in determining "projected disposable income"); *In re Lanning*, 380 B.R. 17 (10th Cir. B.A.P. 2007) (disposable income as calculated from B22C form is only starting point in determining projected disposable income; may be modified if facts show that calculation fails accurately to predict debtor's actual ability to fund the plan); *In re May*, 381 B.R. 498 (Bankr. W.D. Pa. 2008) (disposable income derived from Form 22C is the starting point establishing a rebuttable presumption); *In re Liverman*, ___ B.R. ___, 2008 WL 768727 (Bankr. D.N.J.) (debtor's ability to pay creditors as of effective date of plan is most accurately depicted in debtor's Schedules I and J); *In re French*, ___ B.R. ___, 2008 WL 681684 (Bankr. W.D. Ky.) (projected disposable income is forward-looking concept; result reflected on Form B22C is starting point of analysis, a presumption subject to rebuttal).

[2] *See, e.g., In re Kibbe*, 342 B.R. 411 (Bankr. D.N.H. 2006), aff'd, 361 B.R. 302 (1st Cir. B.A.P. 2007) (looks forward to time of confirmation and thereafter); *In re Riggs,* 359 B.R. 649 (Bankr. E.D. Ky.2007) (projected disposable income must be determined by reference to Schedules I and J)*; In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill.2006) (same as *Kibbe*); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S.C. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex.2006) (same).

[3] *See, e.g., In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006) (determination made on basis of B22, not Schedules I and J); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006) (same); *In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006) (same); *In re Girodes*, 350 B.R. 31 (Bankr. M.D.N.C. 2006) ("disposable income" and "projected disposable income" are the same); *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007)(same); *In re Miller*, 361 B.R. 224 (Bankr. N.D. Ala. 2007) (Form B22C dispositive with respect to above-median income debtors' projected disposable income); *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007); *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (8th Cir. B.A.P. 2007) (projected disposable income is disposable income calculated on Form B22C extrapolated over applicable commitment period); *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2007) (projected disposable income required to be paid to unsecured creditors was simply disposable income as

Bankruptcy Appellate Panel in its recent decision in *Coop v. Frederickson*, 375 B.R. 829 (8th Cir. B.A.P. 2007) adopted this last approach.  In *Frederickson*, the Bankruptcy Appellate Panel adopted what it called the "plain meaning" approach holding that the Form 22C controls the determination of projected disposable income.  In so doing, it rejected the notion that the court should look at the actual or anticipated (rather than historical) income or the actual (rather than objective) expenses of the debtor.  Although decisions of the Bankruptcy Appellate Panel are not binding, they are considered persuasive, *see In re Gakinya*, 364 B.R. 366 (Bankr. W.D. Mo. 2007), and this Court has determined to follow the holding in *Frederickson* until such time as it receives different guidance from the Eighth Circuit.

That holding is, however, not specifically applicable to below-median debtors. According to one court, the majority of courts that have considered the question have held that projected disposable income for below-median debtors is determined by utilizing Schedules I and J.  *In re Cleary*, 357 B.R. 369, 372 (Bankr. D.S.C. 2006).  The statute, however, specifies that disposable income is to be determined by subtracting the amounts reasonably necessary to be expended for the support of the debtor and the debtor's dependents from the debtor's current monthly income.  § 1325(b)(2).  A number of other courts have so held.  *See In re Girodes*, 350 B.R. 31 (Bankr. M.D.N.C. 2006); *In re Linn*, 2008 WL 687448 (Bankr. N.D. W.Va.).  The holdings of those courts opting for use of Schedules I and J to determine projected disposable income are predicated primarily upon the philosophy rejected by the court in *Frederickson,* that projected disposable income is a forward-looking concept and inconsistent with the historical

---

defined by Congress based on historical average projected over applicable commitment period); *In re Mancl*, 381 B.R. 537 (W.D. Wis. 2008) (projected disposable income is simply disposable income projected forward over term of plan).

and objective numbers reflected in the definition of disposable income. While the holding in *Frederickson* relates directly only to above-median debtors, this Court believes that the approach to the concept and to statutory construction reflected in *Frederickson* suggests that the Bankruptcy Appellate Panel would adhere to the straight-forward statutory language in determining disposable income for below-median debtors. The Court clearly opts for a formulaic approach to determining the concept in the context of above-median debtors. For below-median debtors, a formula also exists, it is simply different. For below-median debtors, the statute specifies that disposable income is determined based on current monthly income less amounts reasonably necessary to be expended for the support of the debtor or a dependent of the debtor. Based on the *Frederickson* court's rejection of the concept of departing from that definition to arrive at projected disposable income, this Court believes it would similarly reject any interpretation which departs from the definition in the context of below-median debtors. Accordingly, the Court holds that the appropriate method for determining projected disposable income for below-median debtors is to begin with their current monthly income as reflected on Form 22C and deduct the recurring living expenses on Schedule J.[4]

      Applying that definition to the Debtors in these cases indicate that they have no disposable income and therefore no projected disposable income. As noted above, Glover's current monthly income as calculated on Form 22C is $0. His disposable income is, therefore, necessarily less than $0. In the Rush case, Form 22C shows that the current monthly income is $1,576.00. Expenses shown on the Schedule J which, as discussed below, would not be the only

---

[4] The Court's holding is based upon its extension to below-median debtors of the holding in *Frederickson*. The *Frederickson* case is currently on appeal to the Eighth Circuit Court of Appeals. Should the Eighth Circuit offer different guidance with respect to the use of a formulaic approach to the determination of projected disposable income, the Court reserves the right to rule differently in another matter.

expenses which would need to be deducted to arrive at disposable income for the below-median debtor, are $2,727.00 resulting in a negative disposable income of $1,151.00.

As noted above, the exercise in which the court is engaged after the amendments effected by BAPCPA is no longer to determine what amount must be paid to the trustee pursuant to the plan, but rather what must be paid to unsecured creditors under the plan. In order to arrive at that figure, it is necessary to make certain additional adjustments, as other courts have noted. First, Schedule J makes no provision for taxes. The reason for this is that taxes are assumed to have been deducted from gross income to arrive at net income on Schedule I. *Linn*, 2008 WL 687448, *2 (must include payroll deductions shown on Schedule I). Second, Chapter 13 debtors are directed not to reflect on Schedule J payments on secured debts which they intend to satisfy pursuant to the plan. Accordingly, it is also necessary then to subtract amounts to be paid to secured creditors. *In re Quarterman*, 342 B.R. 647, 652 (Bankr. M.D. Fla. 2006) (must deduct payments debtor is proposing to make in plan on secured claims); *In re Nevitt*, 2006 WL 2433491 (Bankr. N.D. Ill.) ("Payment on account of secured debts must be taken into account to calculate projected disposable income. Schedule J does not list payments for secured debts, such as vehicle loans."). The resulting sum, after these adjustments, should be the amount payable to unsecured creditors under the plan.[5]

---

[5] The question of which creditors should share in the payment to unsecured creditors made by above-median debtors has been considered by a number of courts. The statutory language fails to distinguish between priority and nonpriority creditors. Because amounts payable to the priority creditors have already been taken into consideration in the calculation embedded in the B22C form, most courts have held that those creditors may not share in the required payment but that it must be committed solely to the payment of nonpriority unsecured creditors under the plan. *See, e.g., In re Wilbur*, 344 B.R. 650 (Bankr. D. Utah 2006) (above-median debtors must pay disposable income exclusively to non-priority unsecured creditors); *In re McDonald*, 361 B.R. 527 (Bankr. D. Mont. 2007) (in determining amount payable to unsecured creditors, debtor must add back deduction for trustee's fees on line 50 in Form B22C); *In re Amato*, 366 B.R. 348 (Bankr. D.N.J. 2007) (same; also, debtor's attorney's fees may not be deducted); *In re Puetz*, 370 B.R. 386 (Bankr. D. Kan. 2007) (agreeing with *Wilbur* and *McDonald* and rejecting *Amato*, court holds creditor specifically provided for under § 707(b)(2)(A) need not share in the unsecured creditors'

Even were this Court, however, to adopt the approach that projected disposable income for below-median debtors is determined by reference to Schedules I and J, it would still conclude that in these cases the Debtors have no disposable income and, therefore, no projected disposable income. The reason is that in each case a substantial portion of the income shown on Schedule I is derived from Social Security. As noted above, the definition of current monthly income specifically excludes amounts attributable to Social Security. § 101(10A). Congress has therefore determined that debtors need not commit such income to the payment of unsecured creditors under the plan. Even those courts that have determined that reference to Schedules I and J is appropriate for determining projected disposable income have concluded that they should nonetheless exclude Social Security income. *See, e.g., Schanuth*, 342 B.R. at 606, n. 12; *In re Ward*, 359 B.R. 741 (Bankr. W.D. Mo. 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007); *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex 2007). Performing that calculation in these cases yields negative disposable income. In the Rush case, Schedule I net income is $2,992.00. Subtracting the $686.00 of that amount that derives from Social Security and then the $2,727.00 in average monthly expenses yields a net monthly income of a negative $421.00. The result is similar in the Glover matter. Net income shown on Schedule I is $1,268.00. Subtracting the $695.00 portion attributable to Social Security and the $1,137.00 in average monthly expenses shown on Schedule J yields a net monthly disposable income of a negative $564.00. It is clear that neither of these Debtors has

---

pool under § 1325(b)(1)(B); other unsecured creditors, not so provided for, including debtor's attorney's fees, may share in this payment); *In re Echeman*, 378 B.R. 177 (Bankr. S.D. Ohio 2007) (debtor is not entitled to pay priority unsecured claims from projected disposable income if such claims have already been deducted on Form B22C). Because the priority creditors are not otherwise accounted for in the forms filed by a below-median debtor, such creditors may share in the payment amount determined by subtracting the identified expenses from current monthly income.

disposable income.

### B. Applicable Commitment Period

While it is clear that neither of these Debtors has disposable income, the question remains whether they have a commitment period requirement. The statute says that unless unsecured claims are paid in full, upon objection, the debtors must demonstrate that they are committing all their projected disposable income to the payment of unsecured creditors under the plan for the applicable commitment period. § 1325(b)(1)(B). For debtors below the applicable state median level of income, the applicable commitment period is three years. § 1325(b)(4).

Two views have evolved as to what the statutory language relating to applicable commitment period means. Some courts hold that it imposes a temporal requirement, meaning that the debtor must remain in Chapter 13 and make payments for the specified period.[6] Some, however, have held that the statute has both temporary and monetary components being merely a part of a formula that specifies a return to unsecured creditors and does not impose a minimum

---

[6] *See, e.g., In re Schanuth*, 342 B.R.601 (Bankr. W.D. Mo. 2006)(temporal); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006) (same); *In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala 2006) (same); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006) (same); *In re Cushman*, 350 B.R. 207 (Bankr. D.S.C. 2006) (same); *In re Davis*, 348 B.R. 449 (Bankr. E.D. Mich. 2006) (same); *In re Nevitt*, 2006 WL 2433491 (Bankr. N.D. Ill.) (same); *In re Crittendon*, 2006 WL 2547102 (Bankr. M.D.N.C.) (same); *In re Girodes*, 350 B.R. 31 (Bankr. M.D.N.C. 2006) (same); *In re Casey*, 356 B.R. 519 (Bankr. E.D. Wash. 2006); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007) (same); *In re Luton*, 363 B.R. 96 (Bankr. W.D. Ark. 2007) (same); *In re Grant*, 364 B.R. 656 (Bankr. E.D. Tenn. 2007); *In re Beckerle*, 367 B.R. 718 (Bankr. D. Kan. 2007) (same); *In re Mullen*, 369 B.R. 25 (Bankr. D. Or. 2007) (same); *In re Pohl*, 2007 WL 1452019 (Bankr. D. Kan.) (same); *In re Frederickson*, 368 B.R. 825 (Bankr. E.D. Ark. 2007), *aff'd* 375 B.R. 829 (8th Cir. B.A.P. 2007)(when applicable, ACP is a temporal requirement not a monetary requirement); *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007); *In re Hylton*, 374 B.R. 579 (Bankr. W.D. Va. 2007) (same); *In re Kidd*, 374 B.R. 277 (Bankr. D. Kan. 2007) (court denies confirmation of plan which would permit debtors, without modification, to pay off unsecured claims less than in full over period less than applicable commitment period; suggests debtors may achieve this result with good faith modification pursuant to § 1329); *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2007) (applicable commitment period is temporal).

plan length requirement.[7] Finally, several courts have held that if the debtors' disposable income is negative, the applicable commitment period concept is simply irrelevant and debtors have no requirement to pay any specific amount to their unsecured creditors for any particular period of time.[8]

In *Frederickson*, the Eighth Circuit Bankruptcy Appellate Panel joined the last group. In that case, it clearly held that the applicable commitment period is not a minimum plan duration and that if the debtors' disposable income is negative, there is no applicable commitment period. As noted, this holding was made in the context of debtors with income above the applicable state median. The question is whether the holding applies as well to debtors whose income is below the median. This Court concludes that it does.[9] There is nothing in the rationale of the holding which limits the result to the above-median setting. It is not predicated upon the interpretation of a statute applicable only to above-median debtors. Rather, interpreting a statute that applies to both classes of debtors, the Court simply holds flatly that debtors without disposable income

---

[7] *See, e.g., In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006) (it is in part temporal and in part monetary; intended to insure fixed return to unsecured creditors); *In re Swan*, 2007 WL 1146485 (Bankr. N.D. Cal.) (same); *In re Mathis*, 367 B.R. 629 (Bankr. N.D. Ill. 2007) (same); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007) (same); *In re Anderson*, ___ B.R. ___, 2008 WL 748416 (Bankr. S.D. Ohio) (same) (applicable commitment period acts as both a multiplier to calculate the total amount of projected disposable income and also the required length of debtor's plan for the payment of nonpriority unsecured creditors).

[8] *See, e.g., In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006) (applicable commitment period irrelevant when debtor has no projected disposable income pursuant to B22C); *In re Lawson*, 361 B.R. 215 (Bankr. D. Utah 2007) (same); *In re Brady*, 361 B.R. 765 (Bankr. D.N.J. 2007) (same); *In re Frederickson*, 368 B.R. 825 (Bankr. E.D. Ark. 2007), *aff'd* 375 B.R. 829 (8th Cir. B.A.P. 2007) (same); *In re Green*, 378 B.R. 30 (Bankr. N.D.N.Y. 2007) (same); *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2007) (*contra*, plan must run for 60 months even if projected disposable income is negative).

[9] Once again, the Court's holding on this issue is based upon its extension to below-median debtors of the holding in *Frederickson*. Should the Eighth Circuit offer different guidance with respect to the relevance of the applicable commitment period to debtors with no disposable income, the Court reserves the right to rule differently in another matter.

have no applicable commitment period requirement. The statute operates the same way with respect to both classes of creditors, the applicable period simply being longer in one case than the other. Similarly, for both classes of debtors, there are statutory formulas for calculating disposable income. Both calculations start with the statutorily defined concept of current monthly income while the deductions in one case are regulated by an objective set of criteria and in the other by the debtor's actual expenses. Performing these calculations in either case can result in the debtors having no disposable income. Further, it would certainly seem anomalous to require below-median debtors, who presumably have fewer resources, to remain in Chapter 13 and continue to make monthly payments, while relieving above-median debtors from that obligation.

For all these reasons, the Court holds that below-median debtors whose expenses exceed their current monthly income and therefore have no disposable income, and no projected disposable income have no applicable commitment period and are therefore not required to pay any particular amount to their unsecured creditors for any period of time.[10]

---

[10] The Court notes that not only do these plans offer no payment to nonpriority unsecured creditors, but they appear not to be paying any other creditors either. Neither Debtor lists any secured or priority debts being paid under the plan. Accordingly, the only function served by each of these plans appears to be the payment of the fees of Debtors' counsel over time. The Court has some uneasiness about a Chapter 13 plan which does nothing more than pay attorney's fees and does not wish to encourage them. However, the trustee raised no issues in this case other than the two discussed above. While other objections might conceivably be made, the Court decides no questions other than those raised.

For all the reasons stated above, the trustee's motions to deny confirmation in both cases are denied.

DATED:   April 24, 2008           /s/ Dennis R. Dow
                                  HONORABLE DENNIS R. DOW
                                  UNITED STATES BANKRUPTCY JUDGE

Copies to:
Rick Fink
Noel Bisges
J. Brian Baehr